## CONLEY v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit.
January 10, 1928.

No. 2665.

1. **Criminal law** ⊙⇒113—**Venue of altering stolen Liberty Bonds and possessing them with intent to defraud could not be laid in district where theft occurred, without proof of alteration in such district, on defendant's arrest in another district; "beginning" (Pen. Code, §§ 148, 151 [18 USCA §§ 262, 265]; 28 USCA § 103).**

Venue of offenses of altering stolen registered Liberty Bonds by erasing names of payees and the possession of said bonds so altered with intent to defraud, under Penal Code, §§ 148, 151 (18 USCA §§ 262, 265), could not, under Comp. St. § 1024 (28 USCA § 103), be laid in district in which bonds were stolen, where defendant was arrested in possession of bonds in another district, without proof that alteration actually occurred in former district, since, even if defendant formed intention to alter them in such district, this would not constitute "beginning" of the offense, within said section 1024.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Beginning.]

2. **Criminal law** ⊙⇒323—**As respects venue of offense, presumption is that forgery of stolen bonds was committed where bonds were found in forged state (Pen. Code, §§ 148, 151 [18 USCA §§ 262, 265]).**

As respects venue of offense of altering stolen Liberty Bonds and possession thereof so altered with intent to defraud, in violation of Penal Code, §§ 148, 151 (18 USCA §§ 262, 265), the presumption is, in the absence of evidence to the contrary, that the forgery was committed where the bonds were found in a forged state.

**3. Criminal law ⬥564(1)—As respects venue of offenses, evidence held insufficient to show that alteration of stolen Liberty Bonds occurred in district where stolen (Pen. Code, §§ 148, 151 [18 USCA §§ 262, 265]; 28 USCA § 103).**

In prosecution for altering stolen registered Liberty Bonds by erasing payees' names and having such bonds so altered in his possession with intent to defraud, under Penal Code, §§ 148, 151 (18 USCA §§ 262, 265), evidence *held* insufficient to show that alteration occurred in district where bonds were stolen, so as to authorize conviction therefor in that district, under Comp. St. § 1024 (28 USCA § 103).

**4. Criminal law ⬥16—Larceny of Liberty Bonds and possession thereof unaltered are not federal offenses.**

The larceny of registered Liberty Bonds and the having thereof in possession unaltered are not offenses against the federal law.

In Error to the District Court of the United States for the Middle District of North Carolina, at Winston-Salem; Johnson J. Hayes, Judge.

John Conley was convicted of altering stolen registered Liberty Bonds and having said bonds so altered in his possession, with intent to defraud, and he brings error. Reversed and remanded for new trial.

J. M. Wells, Jr., of Winston-Salem, N. C. (John C. Wallace, of Winston-Salem, N. C., on the brief), for plaintiff in error.

F. A. Linney, U. S. Atty., of Charlotte, N. C. (Ralph Bingham, Asst. U. S. Atty., of Vilas, N. C., on the brief), for the United States.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. On the night of October 2, 1926, the store of one George Fowler, at Greensboro, in the Western district of North Carolina, was broken into, and among other things stolen were three registered Liberty Bonds—one for $100, registered in the Treasury Department of the United States in the name of Mrs. Mary F. Fowler; one for $100, registered in the name of George O. Fowler; and one for $50, registered in the name of Miss Elyn C. Fowler. A number of the articles taken from the safe in the store were found a short distance from Greensboro, on the highway toward Asheville. Everything of no value was left hidden on the side of the road, but, along with other property, the bonds above mentioned were carried away.

On November 19, 1926, the plaintiff in error and defendant below, John Conley, was arrested in a resort in Detroit, Mich., and the three stolen bonds, with the names of the payees erased, were found by the officers arresting Conley, under the table at which he was sitting with others in the resort. The defendant was brought back to North Carolina, and was indicted in the United States District Court at Greensboro, in that state, at the December term, 1926. The indictment contains three counts, charging violation of sections 148 and 151 of the Penal Code (18 USCA §§ 262, 265), and charged that defendant altered said Liberty Bonds by erasing the names of the payees, and had in possession said bonds, so altered, with intent to defraud.

In July, 1927, the defendant was tried and, the jury having returned a verdict of guilty, was sentenced to ten years' imprisonment in the federal penitentiary, at Atlanta, from which judgment of the court this writ of error was sued out.

There was evidence tending to show that the defendant was in Greensboro at the time of the burglary. Five assignments of error were filed by the defendant, charging that the court erred:

First, in failing to direct a verdict for the defendant at the close of the evidence introduced by the prosecution.

Second, in not directing a verdict for the defendant at the close of all the evidence.

Third, in refusing to give the following charge asked for by the plaintiff:

"The court charges you, gentlemen of the jury, that if the state has failed to satisfy you beyond a reasonable doubt that the defendant had in his possession the bonds set out in the bill of indictment within the state of North Carolina after the same had been altered, or have failed to satisfy you beyond a reasonable doubt that the defendant altered the bonds set out in the bill of indictment within the state of North Carolina, then you will find the defendant not guilty."

Fourth, that the court erred in the giving of the following instructions:

"If you find from the evidence beyond a reasonable doubt that the defendant, alone or in concert with the codefendant, Burns, took the bonds in question from the safe in Greensboro and altered them here in the Western district of North Carolina, or carried them out of the Western district of North Carolina with the intention and for the purpose of altering them elsewhere, and further find that they did alter them by erasing the names of the payees, and further find beyond a reasonable doubt that such alteration was done with intent to defraud, as I have defined heretofore, then it will be your duty to return a verdict of guilty.

"It is necessary for the government to prove beyond a reasonable doubt that the crime was committed in the Western district of North Carolina, or that it was begun in North Carolina and completed elsewhere, before you can return a verdict of guilty."

Fifth, that the court erred in refusing to set aside the judgment.

The contention of the government is that the venue was properly laid under section 1024, U. S. Comp. Stat. Ann. (28 USCA § 103), which reads as follows:

"When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein."

In construing this statute, the Supreme Court has said:

"Undoubtedly where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done; or where it may be said there is a continuously moving act, commencing with the offender and hence ultimately consummated through him, as the mailing of a letter; or where there is a confederation in purpose between two or more persons, its execution being by acts elsewhere, as in conspiracy." United States v. Lombardo, 241 U. S. 73-77, 36 S. Ct. 508, 510 (60 L. Ed. 897).

[1] The crime of altering the Liberty Bonds, charged in this indictment, can scarcely be said to consist of distinct parts which have different localities, nor is the act of forging or altering a continuously moving act. There is nothing in the evidence to sustain the contention that the forgery was committed in the Western district of North Carolina. The fact that some of the loot, obtained by the robbery, was discarded along the highway, might seem to lead to the conclusion that the bonds, not being discarded, were retained for the purpose of altering them, as was afterward done. But the conclusion is almost inevitable that burglars, fleeing in possession of the goods obtained by their depredations, would not stop, while fleeing, to commit the alteration that constituted the offense. And while the intention may have been formed at that time to afterward make the alteration, yet we are of the opinion that, even if such an intention could be properly concluded from the evidence in the case, it did not constitute such a beginning as is contemplated by section 1024, Comp. Stat. Ann.

To sustain its contention, the prosecution relies on the Lombardo Case, supra, and the cases of In re Palliser, 136 U. S. 257, 10 S. Ct. 1034, 34 L. Ed. 514, Burton v. United States, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362, and Putnam v. United States, 162 U. S. 689, 16 S. Ct. 923, 40 L. Ed. 1118. In the first three of these cases, the question of some action by mail or telegraph is involved, and there is no doubt that section 1024 applies. In the Putnam Case, the defendant returned to the district in which the bank of which he was president was located, and induced an entry that completed the crime begun in another district. We do not think any of these cases in point.

The offense of having in possession the bonds in question with intent to defraud, might consist of distinct parts having different localities, and might constitute a continuously moving act, yet it is clear that this offense could not have begun until after the bonds had been altered.

[2] In addition to this, the presumption is, in the absence of evidence to the contrary, that the forgery was committed where the bonds were found in a forged state. The rule is thus stated by Mr. Justice Story in U. S. v. Britton, Fed. Cas. No. 14650, 24 Fed. Cas. at page 1241.

"And I take the rule of law to be, that the place, where an instrument is found or offered in a forged state, affords prima facie evidence, or a presumption, that the instrument was forged there, unless that presumption be repelled by some other fact in the case. * * * The rule, which I have stated, is not merely correct in a legal sense, but is the dictate of common sense and reason. If a forged instrument is found or uttered in one place, and there is no evidence to show, that it was forged elsewhere, what ground is there to presume, that it was not forged, where it was found, or uttered? If its existence in a forged state is not proved in any other place, it must, from the necessity of the case, be presumed to have been forged, where its existence in such state is first made known."

[3] We are of the opinion that the evidence in the case, as disclosed by the record, does not sufficiently prove the act to have been committed within the Western district of North Carolina, or to have been begun there, and was not sufficient to warrant the verdict of the jury. It therefore follows that the court erred in giving the instruction above set out, to the effect that, if the jury found, beyond a reasonable doubt, that the intention

to alter was formed in the Western district of North Carolina, they should find the defendant guilty.

[4] The larceny of the bonds and the having of the bonds in possession unaltered are not offenses against the federal law. The charges upon which defendant was tried, convicted, and sentenced were the altering of the stolen bonds and having them in possession after alteration, offenses which are clearly a violation of the federal statutes.

We do not think it necessary to discuss the question that would have been presented on this record, had the defendant been charged, in connection with others, with a conspiracy to commit the offense charged in the indictment, and, of course, a different question would have been presented, had the defendant been tried in Detroit, where he was found in possession of the altered bonds.

For the error pointed out, the judgment of the District Court is reversed, and the case is remanded for a new trial.

Reversed.