### JEFFRIES v. UNITED STATES.
No. 3572.

Circuit Court of Appeals, Tenth Circuit.

July 8, 1948.

Rehearing Denied Aug. 5, 1948.

Waldo Wetmore, of Wichita, Kan., and Hayden C. Covington, of Brooklyn, N. Y. (Z. Wetmore, of Wichita, Kan., and George M. Ashford, of Wichita, Kan., on the brief), for appellant.

James W. Wallace, Asst. U. S. Atty., of Topeka, Kan. (Randolph Carpenter, U. S. Atty., of Topeka, Kan., on the brief), for the United States.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Jeffries was convicted on an indictment charging that he was required to register under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq.; had registered with Local Board No. 1 for Scott County, Kansas; had been classified in 4-E; had been ordered to report to such Local Board on January 21, 1946, and, being charged with the duty of reporting to such Board for work of national importance, had failed, neglected, and refused to report to such Local Board at the time and place designated in such order.

Jeffries registered with Local Board No. 1 of Scott County, Kansas, on July 30, 1945. A questionnaire was mailed him on July 30, 1945. He filled it out and returned it to the Local Board on August 4, 1945. In such questionnaire, he stated that he was a minister of religion and that he had served as a minister of Jehovah's Witnesses since January 15, 1941. He further stated that he was a farmer and that, as such, he milked cows, drove a tractor, combine, and plow; that he worked on a farm as a hired hand; that the crops on the farm consisted of 600 acres of wheat and 40 acres of maize, and that the livestock consisted of 15 cows, 11 hogs, and 500 chickens. On September 17, 1945, he submitted two affidavits signed by the Company Servant and the assistant Company Servant of the congregation with which he was associated in support of his claim for IV-D classifica-

tion. The affidavit of the Company Servant averred that Jeffries had been associated with the Watchtower Bible and Tract Society since April, 1939; that since January, 1941, he had been engaged regularly in the witness work of Jehovah's Witnesses; that on April 18, 1943, he was immersed, thus publicly testifying that he had agreed to be a witness for Jehovah; that on March 12, 1944, he enrolled in the Theocratic Ministry course at Kingdom Hall of Jehovah's Witnesses and was still pursuing that course; that on August 31, 1943, he was appointed Stock Servant of the Scott City Company of Jehovah's Witnesses; that on the date of the affidavit, he was calling upon people of Good Will toward Jehovah in his individual territory at Dighton, Kansas. The affidavit of the assistant Company Servant stated substantially the same facts.

In his questionnaire, Jeffries stated that he had conscientious scruples against participating in combatant and noncombatant service. Accordingly, a special form for conscientious objectors was mailed to him. He filled out that form and returned it to the Local Board on August 18, 1945.

In the form last adverted to, he stated that he was identified with Jehovah's Witnesses and that, because of his religious training and beliefs, he was conscientiously opposed to participation in war in any form and that he claimed exemption from both combatant and noncombatant training and service and stated that, because of his conscientious objection to both combatant and noncombatant service in the land and naval service, he should be assigned to work of national importance under civilian direction. Shortly after his registration, at the instance of the Local Board, Jeffries filled out a farm work sheet showing in detail the nature of his farm operations. It showed the size of the farm and the nature of the produce grown thereon. In answer to the question "amount of time employed at other than farm work in past 12 mos.," Jeffries answered "7 days."

On September 17, 1945, the Local Board classified Jeffries as IV-E.

On September 24, 1945, Jeffries wrote the Local Board a letter in which he stated, among other things, "I hereby appeal to the local board for reconsideration of my Selective Service classification which is 4E. Being an ordained minister of Jehovah's Witnesses I believe that I am entitled to 4D, because of the time I spend each month in ministerial work. I average 40 hours a month in this type of work. This 40 hours includes, meeting time, studies, preparation for studies, back call work, and regular witnessing time. * * * "

He further stated that he had furnished evidence that he was a Jehovah's Witness, bearing the descriptive title of "Stock Servant," and, therefore, was entitled to be classified as IV-D.

In such letter he did not directly or indirectly indicate a desire to appeal from the ruling of the Local Board.

At the trial, he admitted he failed to take any steps to appeal and stated he mistakenly believed he could not appeal unless there was a dissent by one member of the Local Board.

Following receipt of the letter, the Local Board, at its next meeting, reconsidered Jeffries' classification and reclassified him as IV-E.

On October 25, 1945, Jeffries was notified to appear for preinduction physical examination on October 31, 1945. He appeared at the time and place. On November 12, 1945, he was mailed a certificate of fitness, showing that the Armed Forces, on November 2, 1945, had accepted him for general military service.

On January 2, 1945, the Local Board mailed to Jeffries an order which recited that he had been classified as a conscientious objector to both combatant and noncombatant military service; had been assigned to work of national importance under civilian direction at Public Service Camp No. 128 at Lapine, Oregon; that he would be furnished transportation to the Camp; that he should first go to his Local Board and obtain proper instructions. It directed him, therefore, to report to the Local Board at 2 p. m., January 21, 1946.

On January 21, 1946, at 2 p. m., Jeffries appeared at the Local Board. The clerk asked him to be seated. Jeffries remained standing and stated that he had changed his

mind about going and left the office of the Local Board.

At the close of the evidence, Jeffries moved for a directed verdict. It was denied.

In Billings v. Truesdell, 321 U.S. 542, 557, 64 S.Ct. 737, 745, 88 L.Ed. 917, the court said: "He who reports to the induction station but refuses to be inducted violates § 11 of the Act [50 U.S.C.A.Appendix, § 311] as clearly as one who refuses to report at all. * * * The order of the local board to report for induction includes a command to submit to induction. Though that command was formerly implied, it is now express. The Selective Service Regulations state that it is the 'duty' of a registrant who receives from his local board an order to report for induction 'to appear at the place where his induction will be accomplished,' 'to obey the orders of the representatives of the armed forces while at the place where his induction will be accomplished', and 'to submit to induction'. § 633.21(b)." See, also, United States v. Collura, 2 Cir., 139 F.2d 345.

■ Clearly, the duty of Jeffries to report embraced more than putting in an appearance at the time and place designated in the order. It included a willingness to be assigned to work of national importance under civilian direction and to go to the camp to which he had been assigned.

The appearance of Jeffries at the office of the Local Board at the time indicated in the order with the intent and purpose not to accept assignment to work of national importance and not to go to the camp to which he had been assigned was as much a noncompliance with the order as if he had not appeared at the office of the Local Board.

The instructions of the court in his charge to the jury to that effect were not erroneous.

Jeffries did not exhaust his administrative remedies with respect to his classification determined by the Local Board. His letter of September 24 to the Local Board indicated no purpose or desire to appeal from its determination of his classification. On the contrary, it expressly requested reconsideration by the Local Board. As stated above, Jeffries admitted in his testimony at the trial that he did not appeal from the decision of the Local Board because he mistakenly believed he could not do so unless one member of the Local Board dissented from its determination of his classification.

■ Since Jeffries did not pursue his administrative remedies to the end, under the decision in Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, error, if any, in his classification was no defense to his refusal to report.

■ However, had Jeffries pursued his administrative remedies to the end, the result here would have been the same. In reviewing the action of the Local Board in fixing a classification, the courts may not weigh the evidence to determine whether the classification made by the local board was justified. The decisions of a local board made in conformity with the regulations are final even though they may be erroneous. It is only when there is no basis in fact for the classification which the local board gave the registrant that the court may set aside the action of the local board for want of jurisdiction.[1]

■ Here, it appears from the written statement made by Jeffries himself to the Local Board that he devoted only a small portion of his time to religious activities and that during substantially more than half of his time, he engaged in farming. In the light of those facts, it cannot be said there was no basis in fact for the classification fixed by the Local Board. This conclusion is fully supported, we think, by the decision of the Supreme Court in Cox v. United States, 332 U.S. 442, 68 S.Ct. 115.

■ The contention that the District Court was without jurisdiction to try the case at Hutchinson, Kansas, is clearly without substance. The trial was held at a term of court at Hutchinson, which convened at Hutchinson on March 10, 1947, pursuant to an order made on January 12, 1947, during a regular term of the court at Wichita, Kansas. Moreover, on January

---

[1] Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567.

14, 1947, while the court was in session at Wichita, Jeffries appeared by counsel and requested that his case be continued and that it be heard at the March term in Hutchinson, and the court, thereupon, continued the case to March 10, 1947, at Hutchinson.

The evidence clearly supported the verdict of the jury finding Jeffries guilty and we are of the opinion that no error occurred at the trial.

Affirmed.