NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3093
_____

UNITED STATES OF AMERICA

v.

JAMES KELLY, Jr.,

Appellant

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-07-cr-00123-1)
District Judge:  Honorable John R. Padova

_____

Submitted Under Third Circuit LAR 34.1(a)
November 16, 2010

_____

Before:  AMBRO, FISHER, and WEIS, Circuit Judges

(Opinion filed: December 7, 2010)
_____

OPINION
_____

AMBRO, Circuit Judge

A jury found James Kelly, Jr. guilty of being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1), and being an armed career criminal in violation of 18

U.S.C. § 924(e)(1).  Kelly filed a *pro se* motion for judgment of acquittal or for a new

trial, arguing that he was not subject to § 924(e)(1), and challenging the sufficiency of the evidence against him at trial. The District Court denied the motion, and sentenced him to a 180-month term of imprisonment, the mandatory minimum under § 924(e)(1).[1]

Kelly filed a timely notice of appeal. We affirm the District Court in rejecting both of his arguments.

## I. Background

Late on February 4, 2007, Super Bowl Sunday, Lower Southampton Police Corporal Louis W. Montalbano observed Kelly speed through a steady red light. Montalbano pulled Kelly over and observed several open and closed beer bottles on the passenger front seat floor, smelled alcohol emanating from Kelly, and noticed that his eyes were glassy. Montalbano suspected Kelly of driving under the influence. After Officer Eric Landamia arrived, Montalbano administered several field sobriety tests to Kelly, which he either refused to take or failed. When Kelly admitted to drinking, Landamia administered a portable breathalyzer test to Kelly. The results revealed a blood alcohol content above the legal limit, and Landamia arrested Kelly for driving under the influence.

Landamia then took steps to impound the car, he called a tow truck and attempted to perform an inventory search. On realizing the car was locked, Landamia asked Kelly for the key. Kelly told him that the key must have been locked in the car. However, while at the police station, during a search, the police located the key in Kelly's sock.

---

[1] The 180-month term exceeded the otherwise applicable statutory maximum for a felon-in-possession conviction.

2

After the tow truck arrived at the scene and unlocked the car, Landamia began his search of it. He observed a black leather jacket on the front driver's seat. When he picked up the jacket, he noticed that a revolver had fallen from the jacket and landed between the kick plate and the driver's seat. The police unloaded the revolver and placed it in safekeeping. Later at the police station, Kelly identified the jacket as his and the police returned it to him.

Police then referred the case to the Federal Bureau of Investigation ("FBI"), who later arrested Kelly at his home. He told the agents that he was ill and they took him to the hospital. While there, Kelly told an agent that he had obtained the car from a police station after his "buddy," who had borrowed it, had been arrested for armed robbery. At trial, however, Kelly stated that he had obtained the car from a motel in Northeast Philadelphia. He stated that he had loaned the car to his brother, Daniel, who had moved into his home in 2006 and continued to live there, and that Daniel had committed the armed robbery. Additionally, witnesses stated that Daniel often wore Kelly's clothes, such as his leather jacket, and that Kelly was not wearing a leather jacket at the Super Bowl party he had been attending prior to his arrest. Therefore, Kelly argued that Daniel had borrowed his jacket the night of the incident and must have worn it when committing the robbery. The jury rejected Kelly's arguments and convicted him.

## II. Jurisdiction

The District Court exercised subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

3

### III. Standard of Review

"In ruling on a motion for judgment of acquittal made pursuant to Fed. R. Crim. P. 29, a District Court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty beyond a reasonable doubt based on the available evidence.' " *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citing *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)). Our review is plenary. *Id.* We also exercise plenary review over issues of statutory and constitutional interpretation. *See United States v. Walker*, 473 F.3d 71, 75 (3d Cir. 2007).

### IV. Discussion

Kelly argues that the Government established only that he was in close proximity to the firearm in question but did not establish the requisite knowledge of possession.[2] He claims that there was neither evidence of his actual knowledge of the gun's presence nor that he knowingly had the power and intention to exercise dominion and control over the gun. *See United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992) ("Constructive possession … requires both dominion and control over an object and knowledge of [its] existence." (internal citations omitted)). The jury did not accept these claims, and neither do we.

When challenging the sufficiency of evidence, a defendant's burden is heavy. *See United States v. Haywood*, 363 F.3d 200, 204 n.3 (3d Cir. 2004) (when reviewing the sufficiency of the evidence, the court must "consider the evidence in the light most

---

[2] Kelly's only challenge to the charge is the element of possession. He concedes the other elements of the charge – that he was a convicted felon and that the firearm moved in interstate commerce before he possessed it. *See* 18 U.S.C. § 922(g)(1).

favorable to the Government and affirm the judgment if there is substantial evidence from which a rational trier of fact could find guilt beyond a reasonable doubt.") (internal citations omitted).  *See also United States v. Smith*, 294 F.3d 473, 476-477 (3d Cir. 2002).  "Thus, a finding of insufficiency should be confined to cases where the prosecution's failure is clear."  *Id.* at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)).

Here, there was substantial evidence from which a jury could reasonably conclude that Kelly had knowledge of the gun's presence.  It is uncontroverted that Kelly was the only occupant of the car and that within it were mail, prescriptions, and other items in Kelly's name.  Kelly admitted that the leather jacket found on the driver's seat of the car was his.  When the police moved it, the revolver fell.[3]  It is debatable where Kelly picked up the car, where he was just prior to being arrested,[4] and whether the car was used by Kelly's brother in a robbery.  Nonetheless, when a jury is faced with evidence that leads to multiple, but reasonable, interpretations, it is free to decide which interpretation to believe.  *See United States v. Murphy,* 35 F.3d 143, 148 (4th Cir. 1994).  Moreover, "[w]hen a defendant has exclusive possession of the premises on which a firearm is found, knowledge, dominion, and control can be properly inferred because of the

---

[3] It is debatable whether the gun was wrapped in Kelly's jacket.  Officer Landamia testified that he heard a clanking sound when he picked up the jacket and looked down to see the gun between the kick plate and driver's seat.  However, he testified that he could not tell from where the gun fell, just that it fell when he picked up the jacket.

[4] Kelly first claimed to police that he was drinking at a bar, then at trial he claimed he was at his sister's home.

5

exclusive possession alone." *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007) (citing *United States v. Avery,* 295 F.3d 1158, 1177 (10th Cir. 2002)).

Put simply, the jury here had before it substantial evidence from which it could reasonably believe that Kelly had knowledge of the gun's presence. It did, and we discern no error.

Next, Kelly argues that he was not subject to sentencing under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) ("ACCA"), because the jury did not make a finding, beyond a reasonable doubt, that the Government proved the requisite elements. In the Presentence Investigation Report, the Probation Office determined that Kelly's felon-in-possession conviction under 18 U.S.C. § 922(g), together with his two prior robbery convictions and a prior drug conviction, made him eligible for sentencing under the ACCA. The District Court agreed, and sentenced Kelly to a 180-month term of imprisonment, the mandatory minimum.

"[P]rior convictions that increase the statutory maximum for an offense are not elements of the offense and thus may be determined by the District Court by a preponderance of the evidence." *United States v.* Coleman, 451 F.3d 154, 159 (3d Cir. 2006). Simply put, "recidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Almendarez-Torres v. United States*, 523 U.S. 224, 243 (1998).[5] In this context, the judge must only find by a preponderance of the evidence that ACCA applies.

---

[5] Kelly concedes, Op. Br. At 20, that we have applied *Almendarez-Torres* to § 922(g) felon-in-possession convictions, allowing prior convictions for sentencing enhancement

Finally, Kelly contends that he was misled to believing that the question of whether he was an armed career criminal would be presented to the jury. He bases this belief on the fact that the ACCA charge was cited in the indictment. This he believes denied his due process rights under the Constitution's Fifth Amendment, which protects against denials of fundamental fairness that are "shocking to the universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973).

This argument misses the point. No doubt "[a]n indictment must set forth each element of the crime that it charges," *Almendarez-Torres*, 523 U.S. at 228, and the purpose of an indictment is to inform fully the accused "of the nature of the charges so as to enable him to prepare any defense he might have." *United States v. Stansfield*, 171 F.3d 806, 812 (3d Cir. 1999) (quoting *Zuziak v. United States*, 119 F.2d 140, 141 (9th Cir. 1941)). But whether a defendant thinks, or believes, that an ACCA charge in the indictment needs to be proven to the jury does not create any new fundamental due process right.[6]

In this context, we affirm.

---

under ACCA to be decided by a judge at sentencing. *See United States v. Mack*, 229 F.3d 226 (3d Cir. 2000).

[6] Moreover, under *Almendarez-Torres*, a judicial finding of a prior conviction that increases the statutory maximum under 18 U.S.C. § 924(e) does not violate the Sixth Amendment. Kelly states that he has raised this issue for the sole purpose of preserving it for further appeal in light of what he calls "still-developing Supreme Court jurisprudence on the application of the Fifth and Sixth Amendments to federal sentencing." Op. Br. at 20.